Dissenting Opinion.
By His Honor, EMILE GODÜHAUX:
The making of the note negotiable in form; the execution of the collateral agreement in a separate document specifying a mode and term of payment different from that prescribed in the note itself; the phraseology of that collateral agreement and of the receipts for installments given in accord therewith — all demonstrate that it was intended and contemplated between-the original parties that the note should be negotiable and negotiated.
This being true it follows that, since the present holder acquired it before maturity from one who had absolute right to negotiate it, he i's a holder in due course and .as such he takes it “free from-defenses available to prior-parties and may enforce payment for the full amount thereof against all parties liable thereon.” Negotiable Instrument Law, Secs. 55 and 57 (Act 64 of 1904).
To hold, as in effect the majority opinion in this case does, that the-note was simply assignable .and that consequently the present holder was merely substituted for, a party to and bound 'by the collateral agreement to- the same extent as the original holder, is to violate and disregard the unequivocal language whereby the parties deliberately declared in writing that they desired to and did execute -and issue a negotiable instrument.
*184 The .documentary evidence in this case shows (and this should be considered in preference to the loose recitals of witnesses) that the maker was to deposit the monthly installments with the Metropolitan 'Company and that the latter in turn was to apply these installments at the end of each year to the payment of the note, that company being designated by the maker as his agent for that purpose. Granting that the present holder, who acquired before maturity, had full knowledge of all this before he acquired the note (and I am satisfied that he did), and that he failed to give notice to the -maker of his acquisition (as he was under no legal obligation to do), I fail to grasp how these incidents can affect the legal relation and transform the maker’s agent to pay into the holder’s agent to receive.
Even could I view the case in the same light as my associates, the utmost that should be held is that the Metropolitan Company, in view of all the surrounding circumstances, was the joint agent of both parties and that its defalcation constituted their joint loss.
But I think this case is controlled wholly by the sections of the Negotiable Instrument Law heretofore noted, which in effect prescribes that where a note, negotiable in form and intended to be negotiable, is acquired in due course and before maturity by -one with full knowledge of an existing collateral agreement, executory in character but not then breached, entered into between the maker and the original holder from whom he acquired it, and varying the mode, means or terms prescribed by the note itself for its payment, he nevertheless is not bound by ■ such agreement and may in disregard thereof enforce the obligation in accordance with the terms of the note itself.
Opinion and decree, December 20th, 1915.
Rehearing refused, January 17th, 1916.
Writ denied, February 23rd, 1916.
'And this principle has recently been .applied in a case, not distinguishable from the present one, where the party .acquiring the negotiable instrument before maturity from the original payee, deliberately concealed the fact of his acquisition from the maker, but nevertheless was held not to. be bound by a collateral agreement, of which he had full knowledge, when he acquired the note, wherein the' maker and the original payee had stipulated the payment should be made in a mode contrary to .that specified in the note itself.
Marx & Sons vs. N. Frey, Ltd., 137 La., ..; 69 South, Rep., 757.
I am unable to concur in the conclusions reached by the majority of the Court, therefore, and must respectfully dissent.